IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Chapter 11 |
| GDC TECHNICS, LLC, § | |
| § | Case No. 21-50484 |
| Debtor. § | |

**DECLARATION OF BRAD FOREMAN, CEO OF GDC TECHNICS, LLC
IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I, Brad Foreman, hereby declare under penalty of perjury:

1. I am the CEO of GDC Technics, LLC ("GDC" or the "Debtor"), a renowned aircraft modification and technology company engaged globally in narrow-body and wide-body aircraft structural and system refinements, with operation centers at Fort Worth Alliance Airport and Port San Antonio.

2. I earned my undergraduate degree in Economics at the United States Naval Academy in 1981, then served in the United States Marine Corps as, among other things, a Douglas A-4M Skyhawk Pilot and a Nuclear Safety Officer. Following my service in the Marine Corps, during which I achieved the rank of Captain, I worked in various roles with increasing responsibility at the McDonnell Douglas Corporation and then at The Boeing Company. In 1999, I began the first of several management and senior management roles at Thales Group, a designer and manufacturer of electrical systems and service provider focused on the aerospace, defense, transportation and security markets. In 2010, I became Vice President of Business Development for Thales USA Defense & Security, Inc. and Thales USA, Inc. In January 2017, I assumed a new role as CEO of Skyhawk ADS, Inc., which services aerospace, defense, and security markets by providing professional advisory services to companies operating in these sectors. I have been CEO of GDC since February 2019.

3. As CEO of GDC, I am responsible for overseeing GDC's operations and financial activities including, but not limited to, monitoring business relationships, cash flow, workforce issues, and financial planning. As a result of my tenure with GDC, my review of public and non-public documents, and my discussions with other members of GDC's management team, I am generally familiar with GDC's business, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from GDC's employees or retained advisors that report to me in the ordinary course of my responsibilities.

4. I am over the age of 18, and I am authorized to submit this declaration on behalf of the Debtor. References to the Bankruptcy Code (as defined herein), the chapter 11 process, and related legal matters are based on my understanding of such as explained to me by counsel. If called upon to testify, I would testify competently to the facts set forth in this declaration.

5. On April 26, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Western District of Texas (the "Court"). To minimize the adverse effects on the business and contemporaneously herewith, the Company has filed motions and pleadings seeking various types of "first day" relief (collectively, the "First Day Motions"). I submit this declaration to assist the Court and parties in interest in understanding the circumstances resulting in the commencement of these chapter 11 cases, and in support of the Debtor's chapter 11 petition and First Day Motions.

## I. Preliminary Statement

6. GDC was, until recently, primarily engaged in several different contracts with The Boeing Company ("Boeing"), most prominently including contracts to refurbish and update the interiors of the current Air Force One ("AFO") aircraft used by the President of the United States

("VC-25A"), as well as to design, engineer and manufacturer the interior of the next generation AFO ("VC-25B"). The Debtor's work on VC-25A and VC-25B was, until the termination of the contracts between Boeing and GDC, based at Port San Antonio, located at 907 Billy Mitchell Boulevard in Southwest San Antonio, with GDC's specific Port San Antonio location being 607m N. Frank Luke Drive. As explained in more detail below, Boeing repeatedly added additional workscope to the contract and repeatedly made changes to the workscope for VC-25B, both of which resulted in delays for which Boeing was obligated to pay GDC, but which Boeing did not pay. Boeing ultimately attempted to terminate all of its contracts with GDC on April 7, 2021 and initiated litigation, all as discussed in more detail, below.

7. To familiarize the Court with GDC's business, the circumstances leading up to this chapter 11 case, and the relief GDC is seeking in the First Day Motions, this declaration is organized into four sections. **Part II** provides background information on GDC's corporate history and operations. **Part III** offers detailed information on GDC's prepetition capital structure. **Part IV** describes the circumstances leading to the filing of these chapter 11 cases. **Part V** summarizes the relief requested in and the legal and factual basis that support the First Day Motions.

## II. Background

**A.    GDC's History and Operations**

8. GDC is a global aerospace company with extensive expertise in engineering & technical services, modifications, electronic systems, research and development, and maintenance, repair, and overhaul ("MRO") services. The Debtor possesses a Federal Aviation Administration ("FAA") Organization Designation Authorization ("ODA") as well as a European Aviation Safety Agency ("EASA") Design Organization Approval ("DOA"), each of which permit GDC to certify certain aircraft projects. Among other things, the Debtor participates in major new aircraft engineering development processes, develops engineering solutions and certifications on existing

aircraft, performs modification and completion work for VIP/VVIP, Head-of-State, commercial, and military customers on a variety of aircraft ranging from upper business jets to both narrow-body and wide-body aircraft, leverages its extensive research and development activities to provide cutting-edge electronic systems for all types of aircraft, and is dedicated to the Department of Defense and Government aviation in providing mission-critical communication, engineering, and integration services.

9. Jerry and Kathy Gore founded GDC in 2000 as Gore Design Completions. It established its first facility in San Antonio in 2007, and rapidly grew its business in aircraft completion contracts. In 2013, Gore Design Completions was acquired by a partnership led by MAZ Aviation, a predecessor of MAZAV Management, LLC ("MAZAV"), along with the SAAV Completions, LLC ("SAAV") (such acquisition, the "2013 Acquisition"). Following the 2013 Acquisition, GDC changed its name to GDC Technics to reflect its new technology-focused strategy. Along with a name change to GDC Technics and a significant amount of investment, the business was expanded to further support customers throughout the world. This included moving the headquarters to Fort Worth, Texas in 2015 and acquiring a full-service engineering firm with offices in Germany, the United Kingdom, and Canada which later became known as GDC Engineering.[1]

10. In February 2019, SAAV abandoned, forfeited, and canceled its ownership interest in GDC (the "Interest Forfeiture"). After the Interest Forfeiture, Oriole Aviation, LLC subscribed for equity interests in GDC (the "2019 Acquisition").

---

[1] An organization chart of the Debtor's subsidiaries is presented in Section III.A, below.

11. Today, GDC continues to service its existing customers in the VIP aircraft MRO business. GDC's existing MRO business and work in progress will be a significant component of stabilizing GDC's business and providing liquidity for ongoing operations.

12. GDC has also developed new connectivity solutions that represent significant improvements over existing configurations and equipment currently prevalent in private and commercial fleets. Specifically, GDC's Advanced Technologies Group provides design, configuration, and installation services related to providing internet and telephone connectivity to aircraft in the air and on the ground worldwide through an existing satellite network capable of providing data throughput and handling comparable to terrestrial networks. GDC's solutions offer competitive advantages over their competitors in network design and coverage within the aircraft, top-of-line security, reduced footprint, and strong relationships with industry partners. GDC's connectivity business is in the growth stage and presents a significant opportunity to provide value to stakeholders on a go-forward basis.

### III. Corporate Structure and Summary of Prepetition Debt

**A.** **Corporate Structure**

13. The Company is privately owned. Following the 2019 Acquisition, GDC's parent company is Oriole Aviation, LLC ("ORAV"), which is not a debtor in these cases and, itself, is owned by GDC Investco LP, Mazav Management LLC, Nabil Barakat, and Oriole Capital Group, LLC. The Board of Managers for ORAV also serves as the Board of Directors for GDC and GDC's subsidiaries, as described more fully in the following corporate organizational structure:



14. GDC is the primary operating entity in GDC's organization structure. Each of Creek Technics, GDC Engineering Inc., and GDC Aerospace Canada, Inc. are essentially inactive. GDC wholly owns GDC Engineering GmbH, a German limited liability company that itself wholly owns GDC Engineering Ltd. (collectively, the "Foreign Subsidiaries"). The Foreign Subsidiaries conduct a relatively small portion of GDC's business but also maintain certain important licenses and regulatory approvals that provide GDC with competitive advantages in certain business lines.

**B.  Prepetition Funded Debt**

15. As of the Petition Date, GDC had approximately $25.4 million in total funded debt obligations, consisting of (a) $19.4 million in aggregate principal and interest amounts outstanding under a term loan facility (the "Term Loan") and (b) approximately $6 million in aggregate principal and interest amounts outstanding under unsecured notes from Boeing (the "Boeing Notes").

16. The Term Loan Facility was provided under that certain Loan and Security Agreement, dated as of February 7, 2019 (as amended from time to time and with all supplements and exhibits thereto, the "Loan Agreement"), by and between ORAV, as borrower, and GDC

Investco, LP, as Lender. The initial aggregate principal amount of the Obligations (as defined in the Loan Agreement) under the Term Loan was $26 million. Pursuant to that certain Supplement No. 1 to Loan and Security Agreement, dated as of February 11, 2019 (the "Supplement"), GDC became a party to the Loan Agreement as a Guarantor and an Obligor (as such terms are defined in the Loan Agreement). The Loan Agreement provides ORAV with a $26 million Term Loan Facility, subject to the terms and conditions set forth therein (together, the "Prepetition Credit Facility"). GDC is also party to that certain Guaranty Agreement, dated as of February 11, 2019, for the benefit of GDC Investco, LP, pursuant to which GDC unconditionally and irrevocably guaranteed the payment of certain obligations of ORAV, including all indebtedness under the Loan Agreement and all obligations of ORAC relating to such indebtedness.

17. The Loan Agreement provides that the obligations arising thereunder are to be secured by liens on substantially all of GDC's assets, subject to customary exceptions and exclusions.

**C.    Trade Debt**

18. GDC's books and records indicate general unsecured debts of approximately $35 million, although the Debtor is engaged in a thorough review of these records. Among other things, a substantial portion of the debts on GDC's books and records are related to the Boeing Contracts (as defined below). GDC anticipates that Boeing may satisfy many of these claims in full or in part, which would result in significant reductions in the debt currently reflected on the Debtor's books. GDC will continue to review claims against it and administer them for the benefit of all creditors of GDC's bankruptcy estate.

**D.     Circumstances Leading Up to the Restructuring and Prepetition Restructuring Efforts**

   **1.     Boeing**

19.     GDC and Boeing have a long-standing business relationship. Beginning in 2016, Boeing and GDC entered into contracts for GDC to perform certain maintenance upgrades on the VC-25A AFO aircraft and in 2018, Boeing and GDC entered into contracts for GDC to design, engineer and build the interiors of the VC-25B AFO aircraft (the "AFO Contracts"). GDC also substantially completed a third contract with Boeing to perform similar services for an aircraft for the Indian Head of State (the "IHOS Contract" and collectively with the AFO Contracts, the "Boeing Contracts"). Approximately two thirds of GDC's workforce exclusively supported the Boeing Contracts, and approximately two thirds of GDC's revenues were generated under the Boeing Contracts, as recently as early April 2021. The Boeing Contracts were primarily serviced at GDC's San Antonio and Alliance Fort Worth facilities.

   **2.     Boeing Notes**

20.     As a result of several delays occasioned by, among other things, Boeing's payment delays and extensions of the programs under the Boeing Contracts, GDC incurred additional costs beyond the initial amounts contemplated in the Boeing Contracts. GDC promptly and properly informed Boeing of these additional costs, which eventually came to total more than $20 million. Boeing repeatedly refused to pay these amounts and, to date, continues to delay and dispute them. In an apparent effort to address Boeing's late payments and mitigate the growing liquidity crisis GDC was experiencing as a result of Boeing's refusal to pay, on March 10, 2021, Boeing agreed to loan GDC $4.09 million, and again on April 6, 2021, Boeing agreed to loan GDC an additional $1.91 million for work performed in 1Q2021 (which should have been paid via the normal invoice process, but which Boeing claimed it could not accept), for a total of approximately $6 million.

GDC used these funds to pay employee salaries and payroll and to pay vendors that were directly engaged in servicing the Boeing Contracts.

### 3. Boeing Termination and Lawsuit

21. At the close of business on April 7, 2021, Boeing notified GDC it was terminating the Boeing Contracts and demanded the return of various materials (the "Materials"). Seven hours later, Boeing sued GDC in Texas state court ("Boeing Suit"). In the Boeing Suit, Boeing alleged that GDC defaulted under the Boeing Contracts because it is financially insolvent. Boeing's complaint fails to mention that the cause of GDC's financial stress is Boeing's refusal to pay over $20 million in payments that should be paid to GDC from Boeing for workscope additions and changes directed by Boeing and GDC's performance under the Boeing Contracts. As a result of Boeing's abrupt termination of the Boeing Contracts and related breach, GDC was forced to terminate its entire workforce in San Antonio and the majority of its employees in Fort Worth, totaling approximately 200 employees.

22. In the Boeing Suit, Boeing obtained a Temporary Restraining Order requiring GDC to return various materials. GDC fully complied—and continues to comply—with the Temporary Restraining Order (and Boeing's requests for GDC to perform actions beyond the scope of the TRO). GDC has filed a Counterclaim in the Boeing Suit for breach of contract, business disparagement, and for GDC's attorney's fees.

### IV. Restructuring Negotiations and Path Forward

23. Despite the significant reduction in scope of GDC's business as a result of Boeing's abrupt, unilateral, and improper termination of the Boeing Contracts, GDC has acted swiftly to respond. GDC has taken appropriate and decisive steps to work with the Lender and existing stakeholders to right-size its business going forward. One of the unfortunate results of Boeing's termination of the Boeing Contracts was GDC's termination of more than 200 San Antonio and

Fort Worth based employees who were solely or primarily engaged in servicing the Boeing Contracts.

24. As these negotiations accelerated after Boeing terminated the Boeing Contracts and filed the Boeing Suit, on April 14, 2021, GDC retained Carl Moore as Chief Restructuring Office to assist existing GDC management with the restructuring process. Mr. Moore was tasked by the board with taking the lead for the Company in negotiations with the Lender and overseeing the restructuring process.

25. Mr. Moore has assisted GDC's management team and me with stabilizing the company and responding to GDC's new reality of sharply reduced operations and headcount and concomitantly reduced revenues. We have commenced and advanced negotiations to seek new working capital to preserve the business, including negotiations with GDC Investco, LP, GDC's existing lender, regarding the use of cash collateral on hand and negotiations with MAZAV regarding post-petition financing to provide GDC with the breathing space it needs to restructure around its remaining business lines to emerge from bankruptcy right-sized and prepared to pursue its best opportunities while preserving jobs for those employees the GDC will need to return to profitable operations. In particular, GDC's connectivity business may provide significant value that can be used to provide meaningful distributions to creditors in this case.

## V. Evidentiary Support for First Day Motions.

26. Contemporaneously herewith, GDC has filed the First Day Motions seeking orders granting various forms of relief intended to stabilize their business operations, facilitate the efficient administration of these chapter 11 cases, and expedite a swift and smooth restructuring. The First Day Motions include the following:

- Debtor's Notice of Designation as Complex Chapter 11 Bankruptcy Case;

- Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Continue to Operate Its Cash Management System, and (II) Granting Related Relief;

- Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtor to (A) Continue Its Insurance Policies and Honor All Obligations in Respect Thereof, (B) Renew, Supplement, and Enter into New Insurance Policies, and (C) Honor the Terms of Related Payment Agreement and Pay Premiums Thereunder, and (II) Granting Related Relief;

- Debtor's Emergency Motion to Extend Deadline for Filing Schedules and Statement of Financial Affairs;

- Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief;

- Debtor's Emergency Motion for Entry of an Order (I) Approving the Debtor's Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtor's Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief;

- Debtor's Emergency Motion for Interim and Final Orders Granting Use of Cash Collateral and Scheduling Final Hearing;

- Debtors' Emergency Motion to Obtain Postpetition Credit on an Interim and Final Basis.

27. By the First Day Motions, the Debtor seeks authority to, among other things, use the Lender's cash collateral and borrow additional amounts to fund operations and administrative expenses during these chapter 11 cases, honor employee-related wages and benefits obligations, pay claims of vendors and suppliers to ensure that their business operations are not disrupted by these chapter 11 cases, honor customer programs (including gift cards), and continue GDC's cash management system and other operations in the ordinary course of business with as minimal interruption as possible. Importantly, GDC requests immediate authorization to use cash collateral on hand and incur up to $500,000 of DIP financing on an interim basis, to ensure sufficient liquidity to continue operating during these chapter 11 cases. Without prompt access to cash, GDC

would be unable to satisfy employee compensation obligations, satisfy trade payables incurred in the ordinary course of business, and fund the administration of this chapter 11 case.

28. I am familiar with the content and substance contained in each First Day Motion and believe that the relief sought in each motion (a) is necessary to enable GDC to operate in chapter 11 with minimal disruption or loss of productivity and value, (b) constitutes a critical element in GDC's efforts to achieving a successful reorganization, and (c) best serves GDC's estates and creditors' interests. I have reviewed each of the First Day Motions and the facts set forth therein are true and correct are true and correct to the best of my knowledge, and are incorporated herein in their entirety by reference. If asked to testify as to the facts supporting each of the First Day Motions, I would testify to the facts as set forth in such motions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: April 30, 2021

Brad Foreman
Chief Executive Officer
GDC Technics, LLC