**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 22, 2022.**



_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-50484-cag |
| | § | |
| GDC TECHNICS, LLC, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |

### ORDER DISALLOWING CLAIM NO. 122 FILED BY THE UNITED STATES OF AMERICA EX. REL AHMED BASHIR

Came on for consideration Claim #122 filed by the United States of America ex. rel Ahmed Bashir ("Claimant" or "Bashir"). In the process of litigating Claim #129, the Court allowed the Reorganized Debtor ("Reorganized Debtor" or "GDC") and the Trustee for the GDC Creditors' Liquidating Trust ("Trustee") to file motions to dismiss Claim #122. GDC, Trustee, and Bashir then filed the following moving papers: Reorganized Debtor's Motion to Dismiss Claim No. 122 (ECF No. 552)[1] ("GDC's Motion to Dismiss"); Trustee's Motion for Dismissal and Disallowance

---

[1] ECF denotes electronic filing number. Unless otherwise specified, all ECF references in this Order are to Bankruptcy Case No. 21-50484.

1

of Proof of Claim No. 122 Filed by United States Ex Rel. Ahmed Bashir (ECF No. 556) ("Trustee's Motion to Dismiss"); Consolidated Response to Motions for Dismissal and Disallowance of Proof of Claim No. 122 (DKT. 552 & 556) (ECF NO. 563) ("Consolidated Response"); Trustee's Reply in Support of his Motion for Dismissal and Disallowance of Claim No. 122 Filed by United States Ex Rel. Ahmed Bashir (ECF No. 567) ("Trustee's Reply"); and Reply in Support of Reorganized Debtor's Motion to Dismiss Claim No. 122 (ECF No. 569) ("GDC's Reply"). For the reasons stated herein, the Court finds that Claim No. 122 should be DISALLOWED in its entirety.

## PROCEDURAL HISTORY

Now-Reorganized Debtor GDC Technics, LLC filed for Chapter 11 bankruptcy protection on April 26, 2021. The Clerk of Court set August 18, 2021 as the deadline to file proofs of claim. Bashir filed Proof of Claim #122 on the deadline. Later the same day, Bashir amended his Proof of Claim.[2] Emerald Aerospace, LLC ("Emerald")—a company owned by Bashir—filed a proof of claim (Claim #129) on the same day.[3]

The original proof of claim states that Bashir, on behalf of the United States, has a claim against GDC for $56,368,725.17. (Claim #122-1). The stated basis for the claim is "False Claims Act / Qui Tam – See addendum". (Claim #122-1, Question 8). The Addendum to Claim #122-1 ("Addendum") explains Bashir's relation to Emerald and how Emerald competed with GDC for Boeing subcontracts for head of state airplanes. (Claim #122-1, Addendum, at ¶ 1). The Addendum further explains that Bashir filed a "False Claims Act / *Qui Tam* action against GDC" and others on April 19, 2019 in the United States District Court for the Western District of Washington, Case

---

[2] Hereinafter, the Court will refer to the original proof of claim as "Claim #122-1" and the amended proof of claim as "Claim #122-2."

[3] The Court previously issued its Order Disallowing Claim #129 filed by Emerald Aerospace, LLC at ECF No. 614 on June 27, 2022.

No. 19-CV-00600RSM ("Washington lawsuit").[4] (Claim #122-1, Addendum, at ¶ 2). A Complaint for Violations of the False Claims Act, 21 U.S.C. §§ 3729, et seq.; and for Violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("Complaint") is attached to the Addendum. (Claim #122-1, at 11–31). The United States declined to intervene in the Washington lawsuit, but Bashir maintains the action as a relator. (Claim #122-1, Addendum, at ¶ 3).

The Addendum asserts that "Qui Tam Action involves the knowingly false representations and certifications GDC made in connection with the bidding/source selection process and work GDC allegedly performed in connection with the VC-25A Subcontracts and VC-25B Subcontracts." (*Id.* at ¶ 4 (internal footnotes omitted)). According to Bashir's Addendum,

> GDC's false representations and certifications relate to (among other things) GDC's financial solvency and ability to perform the Subcontracts; alleged contracts GDC represented it had but did not in connection with the Subcontracts; failure to disclose approximately $170 million in negative equity 'loans' from the Saudi Arabian Ministry of Finance; false promises to secure required performance bonds for the Subcontracts; false assurances concerning GDC's technical and engineering experience and capabilities to perform Subcontracts; GDC's foreign ownership and control, along with the statutory, regulatory and contractual restrictions regarding the same; and misappropriation of U.S. Government funds used to complete multiple aircraft owned by GDC's true beneficial and controlling owners – the Saudi Arabian Ministry of Finance. Further, every one of these false claims by GDC was either known or should have been known by Boeing either before unfairly awarding GDC the VC-25B and VC-25A Subcontracts or soon thereafter.

(*Id.* (internal footnotes omitted)). A footnote to this list of putative misrepresentations asserts

> [t]his was the case until early February 2019. Once the Saudi Arabian Ministry of Finance's two 787-8 aircraft (bearing serial numbers 40053 and 40059) were finally completed, the Saudi Arabian Ministry of Finance flew the aircraft back to Riyadh, forfeited its interests in GDC, and left the remains of GDC to be pillaged by its remaining insiders.

(*Id.*, n. 5).

---

[4] This naming convention comports with the stamp on the Complaint. The case now, however, is named Case No. 2:19-cv-00600-LK.

The remaining substance of the Addendum repeatedly stresses that Bashir's claims "mirror the claims and allegations Boeing is now making against GDC" in Boeing's proof of claim and a state court lawsuit where Boeing sued GDC. (*Id.* at ¶ 5). In summary form, Boeing knew that GDC was insolvent and controlled by the Saudi Arabian government but awarded GDC the subcontracts regardless. (*Id.*). Boeing therefore served as a conduit presenting GDC's false claims to the U.S. government and endangered national security by allowing work on Air Force One to be performed by a foreign-owned company. (*Id.* at ¶¶ 5–7). The U.S. government ultimately paid millions of dollars through its prime contract with Boeing based on GDC's false representations and certifications. (*Id.* at ¶¶ 8–9).

The Complaint in the Washington lawsuit asserts that GDC (and other defendants, including Boeing) violated the False Claims Act ("FCA"), predicated on a violation of the Anti-Kickback Statute. According to the Complaint, "Defendants engaged in a kickback scheme wherein Dunmire, acting as Boeing's agent, received kickbacks from GDC and Al Zeer, which motivated Dunmire to improperly and illegally steer subcontracts to GDC arising out of United States services and materials contracts entered into with Boeing." (Claim #122-1, Complaint, at ¶ 3). In short, Bashir alleges that a Boeing program manager, Jerry T. Dunmire, influenced Boeing's source selection process on multiple heads of state aircraft projects, both domestic and foreign, to favor GDC—despite knowing that GDC was financially and otherwise incapable of satisfactorily completing the subcontracts. (*See generally* Claim #122-1, Complaint). According to Bashir, because Dunmire wrongfully influenced GDC's selection, other qualified subcontractors, including Bashir's company Emerald, lost bids they should have won. (Claim #122-1, Complaint, at ¶¶ 3, 49). Dunmire took these actions in exchange for kickbacks from GDC

4

and its principal. (*Id.* at ¶ 3). Dunmire allegedly enjoyed the fruits of these alleged kickbacks when he purchased a much more expensive home in another state. (*Id.* at ¶ 53).

Bashir's amended proof of claim increases the claimed amount to $312,192,290.15. (Claim #122-2). The stated basis for the claim is "False Claims Act – See prior addendum (and Boeing's 8/18/2021 Amended Addendum to Boeing's Proof of Claim)." (Claim #122-2, Question 8). Nothing is attached to the amended proof of claim. Bashir amended his proof of claim the same day he originally filed a proof of claim.

GDC filed Debtor's Objection to Claim No. 122 of the United States Ex. Rel Ahmed Bashir with Notice (ECF No. 366) ("Objection to Claim") on August 25, 2021. Bashir then filed United States Ex. Rel Ahmed Bashir's Response to Debtor's Objection to Claim No. 112 (ECF No. 503)[5] ("Response to Objection") on October 27, 2021. GDC later filed an Unopposed Motion to Continue Hearings and Convert to Status Conference (ECF No. 532), which the Court granted (ECF No. 533). The Court then held a status conference regarding Claims #122 and #129 on December 20, 2021.

At the status conference, the parties debated what process would most efficiently determine the validity of Claims #122 and #129. After hearing argument, the Court permitted Debtor and Trustee to file motions to dismiss under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule(s)") 7012. The Court did not specify whether Bankruptcy Rules 7008 and 7009 would be incorporated into an analysis under Rule 7012. The Court then issued its Preliminary Scheduling Order and Procedures Regarding Proofs of Claim 122 and 129 (ECF No. 549) ("Scheduling Order") reflecting the decision reached at the status conference.

---

[5] Bashir filed a previous response with the same title at ECF No. 497, which was dismissed for noncompliance with the Local Rules at ECF No. 502.

Thereafter the parties engaged in the "Rule 12 process" they had described at the hearing. First, the objecting parties filed GDC's Motion to Dismiss and Trustee's Motion to Dismiss. Second, Emerald filed its Consolidated Response. Lastly, Trustee's Reply and GDC's Reply followed.

The Court held a hearing on June 1, 2022 to hear argument on the moving papers.

## PARTIES' ARGUMENTS

According to GDC, "Bashir alleges random and nearly indecipherable regulatory and statutory violations. He then suggests, in summary fashion, that those supposed violations trigger FCA liability." (ECF No. 552, at 8). By way of background, GDC provides a sketch of the procedural requirements and substantive elements of the FCA and explains the pleading standards established by Federal Rules of Civil Procedure ("Rule(s)") 12(b)(6), 8(a), and 9(b). (*Id.* at 6–8). First, GDC argues that the only claims properly before the Court are those alleged in Claim #122, including the attached Complaint. These claims fail, according to GDC, because they rest on a legally inapplicable statute and otherwise fail to allege necessary elements of the FCA. (*Id.* at 9). Second, GDC argues that any other claim—such as those arguably raised in the Response to Objection and the Consolidated Response—are procedurally barred because a response cannot cure a deficient claim. (*Id.* at 10). Lastly, GDC asserts *arguendo* that, even if the Court were to consider the claims raised outside of Claim #122, all would "fail to plead the basic elements of an FCA violation." (*Id.*). Other overarching themes of GDC's arguments against these other claims include: failure to describe a claim submitted to the United States; pleading non-compliance inapplicable statutes and regulations; legal foreclosure by the FCA's public disclosure bar; and reliance on inaccurate information which is publicly verifiable. (*Id.*) Attached to GDC's Motion to Dismiss are three newspaper articles to support its public disclosure bar argument and a "FAA

6

ODA DIRECTORY" to substantiate its argument that Bashir relies on inaccurate information when the truth is publicly verifiable. (*Id.* at Exs. 1–4). For these reasons, GDC argues Claim #122 should be dismissed.

The Trustee advances similar arguments. After recounting the procedural history of Claim #122, the Trustee argues that Rules 12(b)(6) and 9(b) apply. (ECF No. 556, at 6–7). Like GDC, the Trustee also explains the FCA's procedural and substantive requirements. (*Id.* at 7–8). The Trustee then divides his argument into three categories: claims raised in the Addendum, claims raised in the Response to Objection, and claims raised in the Complaint. The Trustee first argues that the claims raised in the Addendum—FCA liability premised on false representations and certification and misappropriation of government funds—must be dismissed and disallowed because they do not comport with the FCA's procedural requirement of filing under seal and are precluded by the FCA's public disclosure bar. (*Id.* at 8–13). The Trustee next argues that any claims raised in the Response to Objection must be disregarded because a responsive pleading cannot amend a claim. (*Id.* 13–14). The Trustee also argues that Bashir does not have standing to bring the alleged statutory and regulatory violations in the name of the United States because the alleged violations are not related to the False Claims Act. (*Id.* at 14–16). Lastly, the Trustee addresses the Complaint filed in the Western District of Washington. The Trustee argues that each count in the Complaint must be dismissed because each relies on the Anti-Kickback Statute, which explicitly only applies to payments made under a federal healthcare program, not subcontracts to outfit airplanes. (*Id.* at 18–21). Moreover, according to the Trustee, the claims in the Complaint fail because they do not plausibly allege any kickbacks and there is no private right of action, even for a relator, under the Anti-Kickback Statute. (*Id.* at 21–22). For these reasons, the Trustee submits that Claim #122 should be dismissed and disallowed in its entirety.

Bashir's Consolidated Response principally argues that applying Rules 12(b)(6) and 9(b) to Claim #122 deprive him of due process. According to Bashir, because he timely filed Claim #122 using the appropriate form, he complied with Bankruptcy Rule 3001; but when the Court ordered that Rule 12 apply, the Court retroactively subjected Claim #122 to a standard more demanding than what existed when he filed. (ECF No. 563, at 5–6, 8). Bashir also asserts *arguendo* that the Court only ordered Rule 12/Bankruptcy Rule 7012 to apply, not Rules 8 and 9/Bankruptcy Rules 7008 and 7009, so only Rule 12/Bankruptcy Rule 7012 applies. Either way, according to Bashir, he is deprived of due process by the heightened pleading standard. Bashir further argues that the Court can only consider the attachments to GDC's Motion to Dismiss if it treats the motion to dismiss as a motion for summary judgment. (*Id.* at 10–11).

Addressing his substantive claims, Bashir asserts that his Response to Objection and Addendum do not raise new claims, but rather they relate back to and expound upon legal theories articulated in the Complaint and disclosed to the government. (*Id.* at 11–13). Bashir then notes that he complied with the FCA's procedural requirements because he filed the Complaint under seal in the Western District of Washington, filed Claim #122 after the seal had been lifted, and sought to file his Response to Objection under seal in this Court, but the Court denied that request. (*Id.* at 13–15).

Bashir then advances a litany of reasons why the public disclosure bar does not bar this lawsuit. Bashir asserts that he was the original source of all the allegations contained in his proof of claim, particularly the Complaint, and that he revealed the allegations to the federal government in 2018. (*Id.* at 15–16). Bashir denies the news media publicly disclosed his allegations before he filed the Complaint. Bashir renews his objection to attaching "evidence outside the pleadings" to GDC's Motion to Dismiss; furthermore, he claims the article(s) do not reference Bashir's

allegations that GDC is owned and controlled by the Saudi Arabian government, that information regarding Air Force One was unlawfully provided to a foreign government and foreign individuals, and that "the U.S. Government and its taxpayers were paying for it." (*Id.* at 17–18). Bashir also relies on Boeing's allegations to "show [GDC] cannot run from them," while maintaining that he brought these issues to the attention of the government before disclosure in this Court. (*Id.* at 18). Bashir then argues that deciding whether an FCA action is precluded by the public disclosure bar is inappropriate at the motion to dismiss stage. (*Id.* at 18–19).

Bashir then asserts that he has standing to bring this FCA action based on violations of federal statutes and regulations by citing Supreme Court precedent that, by Bashir's own admission, has been abrogated. (*Id.* at 20). Bashir then proceeds to argue that his Complaint stated a claim for relief under the FCA predicated on those statutes and regulations. This section of the Consolidated Response does little in the way of matching alleged facts to elements, rather focusing on why these statutes and regulations are proper predicates for the FCA. (*Id.* at 21–25). Lastly, Bashir requests leave to further amend Claim #122 should the Court find it deficient.

The Trustee's Reply advances four arguments. First, the Trustee argues that the Trustee's Motion to Dismiss is procedurally proper and does not retroactively impose a heightened pleading standard. (ECF No. 567, at 1). To support this position, the Trustee references the Court's Scheduling Order and cites nonbinding precedent where courts subjected proofs of claim that attached complaints to Rules 12 and 9 scrutiny. (*Id.* at 2). Second, the Trustee reiterates his prior argument that Bashir has no standing to assert new facts and theories contained in the Addendum. (*Id.* at 4–9). The Trustee quotes extensively from the moving papers to identify places where he contends Bashir raised new facts and legal theories. (*Id.*). Third, the Trustee again asserts that the Complaint fails to state a claim because it does not allege sufficient factual support for each

element of the FCA and relies on a legally inapplicable healthcare fraud statute. (*Id.* at 9–12). Finally, the Trustee implores the Court to not grant Bashir leave to amend his complaint because Bashir "complains [of] a situation entirely of his own making" by pursuing litigation in two forums and delay would prejudice the Trust's beneficiaries who are awaiting distributions. Trustee also points out that Bashir could have amended his Complaint "well before now, *because he actually did*" in the Western District of Washington on November 19, 2021. (*Id.* at 13) (emphasis in original). According to the Trustee, the "fact that Bashir did not immediately seek leave to amend the Complaint forming the basis of his Proof of Claim at that time is inexcusable neglect and constitutes undue delay." (*Id.*).

GDC's Reply reads much like the Trustee's Reply. GDC first cites nonbinding precedent where courts have imposed Rules 8 and 9 when a creditor intends to assert a cause of action through a proof of claim. (ECF No. 569, at 2). Second, GDC argues that the "Anti-Kickback Statute is legally inapplicable, and all other purported bases for an FCA violation are procedurally barred." (*Id.* at 3). Third, GDC argues that even if the Court were to consider the procedurally barred claims, they would fail to state a claim because they are legally inapplicable, unrelated to the FCA, and/or barred by public disclosure. (*Id.* at 3–7). Fourth, GDC reiterates its argument that Bashir has not pled facts to support the elements of an FCA claim under any of the theories he alleged. (*Id.* at 7–11). Lastly, GDC argues Bashir has not been deprived of process, but rather that he "attempt[ed] to use the bankruptcy process to get relief he could *never* get in district court, where his blatantly deficient pleading would be summarily rejected under applicable pleading standards." (*Id.* at 11) (emphasis in original). GDC asks that if the Court grants Bashir the opportunity to replead, GDC be likewise allowed to submit another motion to dismiss. (*Id.* at 11–12).

The arguments contained in the parties' moving papers are substantially similar to the arguments the parties advanced at the hearing.

ANALYSIS

The Court appreciates the uncommon procedural posture of this litigation. Unusual circumstances do not necessitate the Court rewrite procedural rules applicable to unliquidated causes of action. For the reasons stated herein, the Court finds that Claim #122 should be DISALLOWED in its entirety.

**I.      Rules 12 and 9(b) apply to this litigation and do not deprive Bashir of due process.**

Bashir's principal argument is that applying Rules 12 and 9(b) would deprive him of due process by retroactively imposing a higher pleading standard. (ECF No. 563, at 5–9). According to Bashir, to state a claim, he simply needed to comply with Bankruptcy Rule 3001 by filling out the appropriate proof of claim form(s). (*Id.* at 7–8). No party disputes that Bashir met Bankruptcy Rule 3001's requirements. Therefore, from Bashir's perspective, he is deprived of due process because Rules 12 and 9(b) are far more exacting. (*Id.*). The Court finds this argument unavailing.

**a.  Bankruptcy Rule 3001**

Bankruptcy Rule 3001(a) provides that a "proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Bankruptcy Rule 3001(f) further states that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). A compliant claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

Therefore, the burden of persuasion under bankruptcy claims procedure always lies with the claimant, who must comply with Bankruptcy Rule 3001 by alleging sufficient facts in the proof

of claim to support the proof of claim. ***In re Rally Partners, L.P.***, 306 B.R. 165, 168 (Bankr. E.D. Tex. 2003). Once the claimant satisfies these requirements, the burden shifts to the objecting party to produce evidence that "which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." ***Id.*** (citing ***Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)***, 223 F.3d 1035, 1041 (9th Cir. 2000); ***Sherman v. Novak (In re Reilly)***, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000)). If the objecting party produces evidence to rebut the claim, the burden of persuasion shifts back to the claimant to establish the validity and amount of the claim by a preponderance of the evidence. ***Rally Partners***, 306 B.R. at 169.

### b. Rules 8(a)(2), 9(b), and 12(b)(6)

The Federal Rules of Civil Procedure employ a similar process for pleading causes of action. Plaintiffs must plead a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) strives to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." ***Bell Atlantic Corp. v. Twombly*** 550 U.S. 544, 555 (2007) (quoting ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). The plaintiff is obliged to provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. ***Twombly***, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. ***Id.*** at 570. A court must accept all facts alleged by the plaintiff as true at the pleading stage. ***Id.*** at 555–56. A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Harold H. Huggins Realty, Inc. v. FNC, Inc.***, 634 F.3d 787, 796 (5th Cir. 2011) (quoting ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009)).

Certain causes of action have a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). More than plausibility, Rule 9(b) requires the plaintiff to "plead the who, what, when, where, and why as to the fraudulent conduct." *Life Partners Creditors' Tr. v. Cowley (Matter of Life Partners Holdings, Inc.)*, 926 F.3d 103, 117 (5th Cir. 2019) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

Much like how the claims allowance process allows parties in interest the opportunity to object to the legal sufficiency of a proof of claim, Rule 12(b) offers civil defendants a mechanism to challenge claims filed against them early on in a lawsuit. Specifically, Rule 12(b)(6) allows for motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678). Moreover, "dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) (citation omitted). In other words, Rule 12(b)(6) is inextricably linked to Rule 8(a)(2) and, when applicable, Rule 9(b). Rules 8(a)(2) and 9(b) are Rule 12(b)(6)'s measuring sticks. If a complaint satisfies the applicable pleading standard, the Court should deny the motion to dismiss; and vice versa.[6]

---

[6] If a complaint fails to state a claim, dismissing the case is not always the appropriate remedy. Rule 15(a)(2) declares the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When a claim is subject to dismissal under Federal Rule 12(b)(6) for failure to state a claim, "courts often afford plaintiffs at least one opportunity to cure pleading deficiencies . . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

### c. Rules 8(a)(2), 9(b), and 12(b)(6) may be applied to the claims allowance process through Bankruptcy Rule 9014.

Though Rules 8(a)(2), 9(b), and 12(b)(6) are most commonly associated with federal civil procedure, they can apply in the bankruptcy claims allowance process. When a party in interest objects to a proof of claim, the objection creates a contested matter. *Matter of Taylor*, 132 F.3d 256, 260 (5th Cir. 1998) (citation omitted); *see also* Fed. R. Bankr. P 3007 advisory committee's note to 1983 enactment ("The contested matter initiated by an objection to a claim is governed by rule 9014."). Bankruptcy Rule 9014 governs contested matters. Bankruptcy Rule 9014(c) states that the bankruptcy court "may at any stage in a particular matter direct that one or more of the other Rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c).

A bankruptcy court does not err when it applies Rule 12(b)(6) to the contested matter initiated when a party objects to a proof of claim. *In re Cloud*, 214 F. 3d 1350, at *2 (5th Cir. 2000) (per curiam) (unpublished). In *Cloud*, a creditor filed a proof of claim which alleged that the debtor had engaged in fraud, conversion, fraudulent transfer, and conspiracy by shifting around assets. *Id.* at *1. The debtor objected. *Id.* "The bankruptcy judge specifically noted that he would view [the] objection to the proof of claim as a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* at 2. Ultimately, the bankruptcy court dismissed the creditor's proof of claim. *Id.* at *1. On appeal, the creditor challenged the court's application of civil procedure rules to a proof of claim in bankruptcy. The Fifth Circuit affirmed, ruling that

> the bankruptcy judge was exercising his power under Rule 9014 to apply "one or more of the Rules in Part VII." In this case, that rule was Federal Rule of Bankruptcy Procedure 7012. As such, the bankruptcy court was will within its discretion to apply Rule 12(b)(6) to this contested matter.

*Id.* at 2.

14

There is no question Rules 8(a)(2) and 9(b) may also be applied to the claims allowance process. First, Rule 9014(c) explicitly authorizes application because Bankruptcy Rules 7008 and 7009 are contained in Part VII of the Bankruptcy Rules. Fed. R. Bankr. P. 7008, 7009, 9014(c). Bankruptcy Rules 7008 and 7009 incorporate Rules 8(a)(2) and 9(b). Fed. R. Bank. P. 7008–7009. Second, Rules 8(a)(2) and 9(b) cannot be severed from Rule 12(b)(6). If a court orders Rule 12(b)(6) to apply to a proof of claim, the court must have some way to measure the sufficiency of that claim. As explained above, Rules 8(a)(2) and Rule 9(b) provide the measuring stick. For these reasons, Rules 8(a)(2), 9(b), and 12(b)(6) may be applied to the claims allowance process.

**d. Because a bankruptcy court may apply Rule 12(b)(6) and its attendant pleading standard to a proof of claim, Bashir was not deprived of due process**.

Here, the Court specifically authorized the parties "to file motions under Federal Rule of Bankruptcy Procedure 7012" in its Scheduling Order. (ECF No. 549, at 2). Because Bankruptcy Rule 7012/ Rule 12(b)(6) must be accompanied by the appropriate pleading standard, either Rule 8(a)(2) or Rule 9(b) must apply. No party disputes that Rule 9(b) applies to the FCA. *See also U.S. ex rel. Grubbs v. Kanneganti*¸ 565 F.3d 180, 190 (5th Cir. 2009) (explaining Rule 9(b)'s requirements in the context of the FCA). Therefore, subjecting Claim #122 to Rule 9(b) is precisely the process due to Bashir after the Scheduling Order.

The Court further finds Bashir's contention that these standards were retroactively applied to be without merit. By Bashir's own admission, his proof of claim is based on causes of action raised in the Washington lawsuit. In his Consolidated Response and at argument, Bashir repeatedly asserted that his Addendum does not raise new claims, but rather the Addendum relates back to and expounds upon legal theories articulated in the Complaint and disclosed to the government. (ECF No. 563, at 11–13). If the Addendum merely elaborates upon the Complaint, applying Rule 9(b) and allowing Rule 12(b)(6) motions to dismiss has not changed the process Bashir originally

encountered. When he filed his Complaint in the Washington lawsuit, Rule 9(b) applied and the defendants were entitled to file Rule 12(b)(6) motions. Nothing about applying Rules 12(b)(6) and 9(b) is retroactive or deprives Bashir of due process.

## II. The Court will consider only the allegations contained in Claims #122-1 and #122-2 articulated by Bashir.

The parties also made several arguments about which allegations in support of Claim #122 are properly before the Court. According to GDC, the only claims properly before the Court are those contained in Claim #122, including the attached Addendum and Complaint. (ECF No. 552, at 9). GDC also argues that any other claim—such as those arguably raised in the Response to Objection and the Consolidated Response—are procedurally barred because a response cannot cure a deficient claim. (*Id.* at 10).

Like GDC, the Trustee also asserts that a responsive pleading cannot amend a claim, (ECF No. 556, at 13–14), so any legal theory raised in the Response to Objection and Consolidated Response cannot be considered. The Trustee, however, takes a slightly different stance regarding Claim #122 than GDC. According to the Trustee, the Addendum attached to Claim #122-1 did not comport with the FCA's procedural requirements though it articulates FCA liability, so it is not properly before the Court. (*Id.* at 8–13). The Trustee also argues that Bashir does not have standing to bring the alleged statutory and regulatory violations in the name of the United States because the alleged violations are not related to the FCA. (*Id.* at 14–16).

Unsurprisingly, Bashir argues the widest universe of allegations to support Claim #122. According to Bashir, the Court must consider Claim #122-1, its Addendum, and its attached Complaint, as well as Claim #122-2. Bashir's counsel took contradictory positions at the hearing, sometimes arguing that the Response to Objection merely expanded upon legal theories already articulated while also arguing statutory and regulatory bases of liability that were first raised in the

Response to Objection. Bashir's counsel also implores the Court to consider allegations Boeing made in its addendum to its proof of claim. (Claim #122-2, Question 8). The Court surmises Bashir refers to the addendum to Claim #79-2, but Bashir never identified which Boeing claim with specificity.  At the hearing, Bashir's counsel also repeatedly referenced state court litigation involving Boeing to support Claim #122. Both GDC and the Trustee agreed that Bashir cannot rely on allegations Boeing previously made in this and other litigation to support his proof of claim.

### a. Any legal theories articulated in the Response to Objection or Consolidated Response are not properly before the court.

Subsequent pleading cannot cure a legally deficient claim for relief. *See Jackson v. Gautreax*, 3 F.4th 182, 188 (5th Cir. 2021) ("It is well settled in our circuit that '[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'") (citations omitted) (alteration in original). Because a trial court may only consider the allegations set forth in a complaint at the motion to dismiss stage, setting forth more specific factual allegations in response to a motion to dismiss does not supplement the complaint. *Roebuck v. Dothan Sec., Inc.*, 515 Fed.App'x. 275, 280 (5th Cir. 2013) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")) This exacting rule extends to new theories for liability under the same cause of action. *Park v. Direct Energy GP, L.L.C.*, 832 Fed.App'x. 288, 295 (5th Cir. 2020) (holding that a new legal theory for Family and Medical Leave Act liability which was not mentioned in the complaint was not properly before the trial court).

Holding true to this bedrock legal principle, the Court will not consider any causes of action or legal theories first articulated in the Response to Objection or the Consolidated Response. Bashir is limited to the words on the face of Claim #122.

**b. The Court will also not permit Bashir to rely on unadjudicated allegations made by Boeing to support his claim.**

No binding precedent exists deciding whether a party may rely on unadjudicated allegations made by outsiders to support the party's cause of action. The Second Circuit, however, considered the issue in ***Lipsky v. Commonwealth United Corp.***, 551. F.2d 887 (2d Cir. 1976). The plaintiff in ***Lipsky*** alleged that corporate defendants had failed to use their best efforts to properly register stock they held with the Securities and Exchange Commission ("SEC"). 551 F.2d at 891. To support this contention, the plaintiff alleged that the SEC had previously filed a complaint against the same defendants alleging that the stock registration statements were materially misleading; the plaintiff attached the SEC's complaint as an appendix to his own complaint. ***Id.*** The plaintiff claimed the statements the SEC had alleged as misleading were "basically duplicates" of statements relating to the stock at issue in ***Lipsky***. ***Id.*** The defendants moved to strike portions of the complaint containing the SEC's allegations under Rule 12(f), and the trial court granted the motion. ***Id.***

On appeal, the Second Circuit upheld the trial court's decision to strike the portions of the complaint relying on the SEC's allegations. ***Id.*** at 893–94**.** Though the trial court did not issue a written ruling explaining why it struck the SEC allegations, the Second Circuit surmised the trial court found those allegations impertinent or immaterial. ***Id.*** at 893**.** Recognizing that when deciding a "Rule 12(f) motion on the ground that the matter is impertinent or immaterial, it is settled that the motion will be denied unless it can be shown that no evidence in support of the allegation would be admissible," the Second Circuit considered whether the SEC's allegations would be admissible in ***Lipsky***. ***Id.*** (citations omitted). The Second Circuit determined that the SEC's allegations were not admissible because they were the result of a consent judgment. ***Id.*** at 893–94**.** Drawing on collateral estoppel's requirement that an issue must have been actually

18

litigated to be used in subsequent litigation, the Second Circuit concluded that a "consent decree entered into by the SEC and [the defendants as a] result of private bargaining" could "have no possible bearing" on the *Lipsky* action. *Id.* Therefore, the Second Circuit reasoned that the SEC's allegations were immaterial and thus properly stricken from the complaint. *Id.* at 894.

Courts within the Second Circuit are split in their application of *Lipsky*. Some courts apply *Lipsky* to disregard and/or strike any allegations derived from unadjudicated complaints, no matter how the complaint at bar used those allegations. *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 79 (S.D.N.Y. 2003) ("[R]eferences to preliminary steps in litigation and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f).") (citations omitted). Other courts read *Lipsky* more narrowly and allow parties to make their own factual allegations based on factual information drawn from other complaints. *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F.Supp.2d 746, 768 n. 24 (S.D.N.Y. 2012). This reluctance to read *Lipsky* as a bright line rule seems particularly popular when the unadjudicated allegations bear indicia of reliability. *Id.* ("Neither Circuit precedent nor logic supports such an absolute rule. Not all complaints are created equal—while some barely satisfy the pleading requirement, others are replete with detailed factual information of obvious relevance to the case at hand. . . . It makes little sense to say that information from such a study—which the [complaint] could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint.").

Beyond the Second Circuit, lower courts have taken similar approaches. The Northern District of Illinois denied a motion to strike allegations based on a New York Attorney General's investigation because *Lipsky* was not binding precedent and the information from the investigation

was both directly related to the case at bar and reliable. ***In re Herbal Supplements Marketing and Sales Practices Litig.***, 15-cv-5070, 2017 WL 2215025, at *4–6 (N.D. Ill. May 19, 2017) (quoting ***Bear Stearns***, 851 F.Supp.2d at 768 n. 24). Similarly, the Southern District of California ruled that a plaintiff could not merely adopt an outsider's state court allegations but the court allowed the plaintiff to rely on primary documents attached to the state court complaints "[b]ecause these documents in effect mostly speak for themselves." ***Conde v. Sensa***, 259 F.Supp.3d 1064, 1071 (S.D. Cal. 2017) (quoting ***Bear Stearns***, 851 F.Supp.2d at 768 n. 24).

In a different posture, the Northern District of Texas struck paragraphs from a complaint that were taken from a complaint in an SEC enforcement action. ***Brooks v. United Dev. Funding III, L.P.***, 4:20-cv-00150-O, 2020 WL 6132230, at *12–13 (N.D. Tex. April 15, 2020). The ***Brooks*** defendants moved to strike as a sanction, arguing that "lifting allegations wholesale from the complaint in the SEC Enforcement Action does not constitute the reasonable investigation required by Federal Rule of Civil Procedure 11." ***Id.*** at *12. The court granted the motion, finding that "[p]laintiffs and their attorneys have not provided the Court with any certification that they independently investigated the allegations prior to their wholesale incorporation into the Amended Complaint." ***Id.*** at *13.

The Court finds the reasoning of these courts persuasive. The idea that a party cannot rely on another's untested allegation, without at least some indication of reliability or personal knowledge, comports with Rules 8(a)'s and 9(b)'s basic requirements that a party must set forth its own allegations with enough specificity to put defendants on notice of the claims. Indeed it is the "plaintiff" who "must plead the who, what, when, where, and why" to survive Rule 9(b). ***Cowley***, 926 F.3d at 117 (citations omitted).

Here, Bashir has done far less than any of the plaintiffs in the cases cited above. Those plaintiffs took allegations and documents from the outsider's complaints or investigations and wove them into their own. In other words, those plaintiffs either paraphrased or poached allegations and actually wrote them into their complaints. Bashir, in contrast, merely referred the Court to "[s]ee . . . (and Boeing's 8/18/2021 Amended Addendum to Boeing's Proof of Claim)." (Claim #122-2, Question 8). Bashir did not spell out any of Boeing's allegations that he sought to adopt as his own. (*Id.*). What is worse, Bashir does not even identify which proof of claim he wants the Court to consider. The Claims Register reflects three different proofs of claim filed by The Boeing Company and related entities. (Claims Nos. 79, 80, 81). The Court surmised from the date that Bashir means Claim #79-2. But "[j]udges are not like pigs, hunting for truffles buried in briefs." *De la O v. Hous. Auth. Of City of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Bashir must do more if he wants to rely upon allegations Boeing made.

Moreover, Boeing's proof of claim remains unlitigated. Rather than adjudicating, Boeing, GDC, and the Trustee negotiated a settlement as part of the confirmed plan of reorganization ("Plan") (ECF No. 239, at § 7.4(b)). Without more reliable information from a government investigation like in *Herbal Supplements* or a study like in *Bear Stearns*, the Court will not allow Bashir to steal facts that led to a settlement to support his proof of claim. For these reasons, the Court will not consider "Boeing's 8/18/2021 Amended Addendum to Boeing's Proof of Claim" as support for Claim #122.

### c. The Allegations Advanced in the Addendum do not comply with the FCA's procedural requirements, but the Court will not dismiss the Addendum.

Trustee argues that the Addendum is not properly before the Court because it raises FCA theories that do not relate back to the Complaint and was not filed under seal.

21

To bring a FCA suit, the relator must comply with certain procedural requirements:

A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2).

When asked whether failure to comply with the sealing requirement necessitated dismissal, the Supreme Court recognized the word "shall" "creates a mandatory rule the relator must follow." *State Farm Fir and Cas. Co. v. U.S. ex rel. Rigsby*, 137 S. Ct. 436, 442 (2016). "The statute, however, says nothing about a violation of that rule." *Id.* The Supreme Court observed that if "Congress had intended to require dismissal for a violation of the seal requirement, it would have said so." *Id.* at 443. Reviewing the legislative history, the Court determined the "seal provision was meant to allay the government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation." *Id.* (citing S. Rep. No. 99-345, at 24 (1986)). "Because the seal requirement was intended in main to protect the Government's interests, it would make little sense to adopt a rigid interpretation of the seal provision that prejudices the Government by depriving it of needed assistance from private parties" who bring private enforcement suits with fewer demands on government resources. *Rigsby*, 137 S. Ct. at 443. Necessitating dismissal "would undermine the very governmental interests the seal provision was meant to protect." *Id.* (citations omitted) (internal quotations omitted). Instead, the Supreme Court held that the decision whether to dismiss the complaint is left to the discretion of the court. *Id.* at 444.

Here, the Court acknowledges the Addendum raises FCA legal theories and facts not contained in the Complaint that were not filed under seal. The Addendum asserts that the "Qui Tam Action involves knowingly false representations and certifications that GDC made in connection with the bidding/source selection process and work GDC allegedly performed in connection with the VC-25A Subcontracts and VC-25B Subcontracts" for Air Force One. (Claim #122-1, Addendum, at ¶ 4). No party disputes the Complaint generally refers to GDC and the subcontracts for Air Force One. The Complaint makes mention of representations GDC made, (*see* Claim #122-1, Complaint, at ¶ 46), but the Complaint contains no iteration of the word certification. Some of the facts set forth in the Addendum are inconsistent at best—or irreconcilable at worst—with allegations in the Complaint. For example, the Addendum states that GDC made "false promises to secure required performance bonds," (Claim #122-1, Addendum, at ¶ 4), but the Complaint states "Boeing awarded the contract even without financial guarantees or requirements that GDC Technics Ltd. enter into a performance bond," (Claim #122-1, Complaint, at ¶ 48). Other facts in the Addendum appear nowhere in the Complaint. Take, for example, the Addendum's assertion that "[o]nce the Saudi Arabian Ministry of Finance's two 787-8 aircraft (bearing serial numbers 40053 and 40059) were finally completed, the Saudi Arabian Ministry of Finance flew the aircraft back to Riyadh, forfeited its interests in GDC, and left the remains of GDC to be pillaged by its remaining insiders – namely MAZ (also a Saudi Arabian citizen)." (Claim #122-1, Addendum, at ¶ 4, n. 5). The Trustee is indeed correct that much of the Addendum is new and was not filed under seal.

Instead of dismissing the Addendum for a seal violation, the Court will instead note the inconsistencies in the pleadings. At the motion to dismiss stage, the Court must accept all well-pleaded facts as true, but the Court need not accept two irreconcilable facts as both true. The Court

will also hold in mind that the Government had an opportunity to intervene in the Washington lawsuit, but declined, so the seal there served the Government's interests. Thus, the Court will exercise its discretion to consider the Addendum even though it was not filed under seal.

### III.   None of the allegations contained in Claim #122 survive Rules 12(b)(6) and 9(b).

The Court will now analyze whether the allegations contained in Claim #122 plead an FCA claim. For the reasons stated above, the Court will only consider the allegations contained in the Addendum, Complaint, and those on the face of the proof of claim that do not refer the Court to Boeing's proof of claim.

An FCA violation arises when someone

(A) knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval;
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
(C) conspires to commit a violation …

31 U.S.C. § 3729(a)(1)(A)–(C). The elements of the FCA are (1) a false statement or fraudulent course of conduct, (2) made or carried out with the requisite scienter, (3) that was material, and (4) that caused the government to pay out money or to forfeit moneys due. *U.S. ex rel. Longhi v. U.S.*, 575 F.3d 458, 467 (5th Cir. 2009) (citations omitted). Presentment of a false claim is the *sine quo non* of the FCA. *Kanneganti*, 565 F.3d at 188. Claim "means any request or demand … for money or property …" 31 U.S.C. § 3729(b)(2). Without pleading a request or demand for money or property, a relator cannot plead a FCA action.

The Fifth Circuit recognizes that "Rule 9(b)'s ultimate meaning is context specific, and thus there is no single construction of Rule 9(b) that applies in all contexts." *Kanneganti*, 565 F.3d at 188 (internal quotations omitted). Therefore, to plead a claim with particularity, "a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless

survive by alleging particular details of a scheme to submit a false claim paired with reliable indicia that lead to a strong inference the claims were actually submitted." *Id.* For example, though the relator's complaint in *Kennaganti* did not plead the exact billing numbers or amounts of the purported false claims, his complaint survived muster because he set out

> in detail including the date, place, and participants, the dinner meeting at which two doctors … attempted to bring him into the fold of their on-going fraudulent plot. He allege[d] his first-hand experience of the scheme unfolding as it related to him, describing how the weekend on-call nursing staff attempted to assist him in recording face-to-face physician visits that had not occurred. Also alleged [were] specific dates that each doctor falsely claimed to have provided services to patients and often the type of medical service or its Current Procedural Terminology code that would have been used in the bill.

*Id.* at 191–92. In other words, if the fraudulent scheme is reliably described in extreme detail, a complaint may survive without pleading the particulars of each request or demand for payment.

Nowhere in 27 pages of allegations in the Addendum and Complaint is a single request or demand for money or property identified. The Addendum copied and pasted a chart from Boeing's Amended Proof of Claim (Claim No. 79-2)[7] which shows "amounts [which] relate to the VC-25B Subcontracts which were ultimately paid by the United States Government through its prime contract with Boeing." (Claim No. 122-1, Addendum, at ¶ 8). Identifying that money was paid is not sufficient to plead a request or demand for money or property.

The Court further does not find that Bashir described the alleged collusion between Boeing and GDC with the same level of detail as in *Kanneganti*. Rather, the Complaint broadly alleges that a Boeing executive pushed subordinates to award GDC a handful of subcontracts for which

---

[7] The Court observes that Bashir copied and pasted this chart from an allegation Boeing made. As expressed above, the Court is uncomfortable allowing pleading based on stolen allegations that are unadjudicated and lack indicia of reliability. That is exactly the case here: Boeing's claim was resolved through negotiation, and the Court has no way to ensure the numbers presented are valid. Though copying and pasting goes further than merely referring the Court to another's proof of claim like Bashir did in response to question 8 in Claim #122-2, the Court still is reluctant to allow Bashir to rely on this stolen chart. Because the Court must accept all well-pleaded facts as true (query if stolen facts are well-pleaded), the Court will consider the chart for the inference that money was paid through Boeing's prime contract.

GDC was allegedly unqualified. The Complaint describes why Bashir thinks GDC was the wrong choice for the award, not any sort of scheme between Boeing and GDC to fraudulently claim money from the government.

In summary form, Claim #122 does not identify a claim, defined as a request or demand for payment or property. Without pleading this namesake element, Bashir's FCA allegations do not satisfy Rule 9(b).

### IV.    The Court will not allow Bashir to amend his proof of claim.

No provision of the Bankruptcy Rules discusses amending a proof of claim. *See generally* Fed. R. Bankr. P.; 9 <u>Collier on Bankruptcy</u> ¶ 3001.04[1] (16th ed. 2022). "Amendments to timely creditor proofs of claim have been liberally permitted to 'cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'" *In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991) (quoting *In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (5th Cir. 1985)). Courts must ensure that post-bar date amendments do not set forth wholly new grounds of liability. *In re Kolstad*, 928 F.2d at 175 (citing *Matter of Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir.1980)).

Because the proof of claim here is premised on an unadjudicated Complaint and Addendum elaborating upon that Complaint, law regarding amending complaints is relevant too. Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule evidences a bias in favor of granting leave to amend. *Id.* To overcome this bias, the court must have a "substantial reason" to deny leave to amend. *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 566 (5th Cir. 2002). In determining whether a "substantial reason" to deny leave to amend exists, the court "may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Id.* (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998)).

Here, the Court finds several of these factors overcome the bias in favor of amendment. Bashir filed Claim #122 on August 18, 2021, just shy of a year ago. The fact that Bashir amended his Complaint in Washington on November 19, 2021 supports the inference that Bashir felt his Complaint could be improved in some way. *See* Case No. 2:19-cv-00600-LK, W.D. Wash., at ECF No. 61 (First Amended Complaint). Bashir could have amended his proof of claim to reflect the Washington lawsuit amendments. He did not.

If Bashir were permitted to amend his proof of claim, he could not advance a new basis for relief. Bashir can only continue with his FCA theory. As explained above, any recovery premised upon the FCA must be filed under seal for at least 60 days to allow the federal government to determine if it wants to intervene. 31 U.S.C. § 3730(b)(2). Once the government decided whether to intervene, the Court would permit another round of motion to dismiss briefing. Trustee and GDC would have 21 days after unsealing to file motions; Bashir would have 14 days to respond; and Trustee and GDC would have 7 days to reply. In other words, the Court could not make a determination on the amended proof of claim for at least 102 days.

At the hearing, the Trustee informed the court that he had intended to begin making distributions to creditors beginning in late June or early July, 2022. A black cloud hangs over the prospect of distribution each day Bashir's claim remains unresolved. For these reasons, the Court finds undue delay, failure to amend at previous opportunities, dilatory motive, and undue prejudice to the creditor body. The Court will not allow Bashir leave to amend.

The Court observes that Bashir could have handled this differently. He could have severed GDC and removed the Washington lawsuit to this court. He could have filed an adversary

proceeding in this case. Or he could have moved to lift the stay to litigate in Washington. Instead, Bashir decided to rest upon a proof of claim premised upon an unlitigated and (now inoperative by amendment) Complaint. He complains of due process, but this is the process he chose.

### CONCLUSION

IT IS THEREFORE ORDERED that Claim #122 by the United States of America ex. rel Ahmed Bashir is DISALLOWED in its entirety.

IT IS FURTHER ORDERED that Reorganized Debtor's Motion to Dismiss Claim No. 122 (ECF No. 552) is GRANTED IN PART, DENIED IN PART.

IT IS FURTHER ORDERD that Trustee's Motion for Dismissal and Disallowance of Proof of Claim No. 122 Filed by United States Ex Rel. Ahmed Bashir (ECF No. 556) is GRANTED IN PART, DENIED IN PART.

# # #